**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| ANITA VILLEGAS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-08-0151 |
| | § | |
| CITY OF FREEPORT, *et al.*, | § | |
|     Defendants. | § | |

**MEMORANDUM AND ORDER**

This civil rights case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 25] filed by Defendant City of Freeport ("City"), to which Plaintiff Anita Villegas filed a Response [Doc. # 29], and the City filed a Reply [Doc. # 35]. Having reviewed the full record, including the uncontroverted evidence, and having applied governing legal authorities, the Court **grants** the City's Motion.

**I.   BACKGROUND**

Plaintiff Anita Villegas, as the survivor of Manuel Villegas ("Villegas"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the City of Freeport and certain of its employees violated Villegas's constitutional rights. Plaintiff also asserted several state law claims against the City of Freeport and its employees. Defendants Ivan Rodriguez, John R. Newton, John Rutherford, Augustine Flores, Heriberto

Abrego, and Ronald Brinkman are police officers employed by the City of Freeport. Defendant John Stanford is the Chief of the City of Freeport Fire Department.[1]

The uncontroverted evidence shows that in the early morning hours of May 22, 2006, City of Freeport police officers Rutherford and Abrego were dispatched to respond to a report of a person yelling in the dark. Upon arriving at the scene, the officers observed an individual they recognized as Villegas. Villegas was walking through the grass and appeared to be fighting with an imaginary person. Villegas then sat down in the grass, talked to himself, and began to fight and kick the grass. Officer Rutherford believed that Villegas was intoxicated and presented a danger to himself and/or others.

Rutherford and Abrego tried to persuade Villegas to accompany them to the police station, but Villegas would not comply. Villegas continued to fight with imaginary people. He was extremely strong, and he kicked, fought, bit and screamed as Rutherford and Abrego took him by the arm and placed him on the ground so they could handcuff him. There is no evidence that Villegas sustained any injury while being placed into the police vehicle and transported to the City lock-up.

---

[1] Plaintiff also named as a Defendant Richard Miller, a police officer employed by the City of Freeport. Plaintiff's claims against Miller were dismissed with prejudice by agreement of the parties. *See* Hearing Minutes and Order [Doc. # 27]. All other individual Defendants were granted summary judgment by Memorandum and Order [Doc. # 24] entered May 6, 2009.

Officer Newton, who had also responded to the scene, directed the police dispatcher to send Freeport emergency medical service ("EMS") personnel to meet the officers and Villegas at the City lock-up to evaluate Villegas in case he needed medical care.

At the police station, Villegas refused to get out of the vehicle, so Rutherford picked him up by his belt and he and Officer Rodriguez carried Villegas into the booking room. Rutherford and Rodriguez placed Villegas on the floor in front of a camera.

EMS attendants Brandon Grover and Jonathan Cory Rabalais arrived approximately one minute after Villegas was placed on the floor. When Rabalais began the medical examination, Villegas started hitting his own head and face on the floor. Rabalais held Villegas's head to prevent Villegas from further injuring himself. Grover held Villegas's torso. Villegas appeared delusional and was violent. The EMS employees and the police officers believed that Villegas was under the influence of drugs and/or alcohol and needed further medical evaluation.

The EMS employees were uncertain how to transport Villegas to the hospital so that he would not injure himself or the EMS attendants. Grover, who had been positioned at Villegas's left side and was holding his torso, moved away to discuss with Rabalais how best to transport Villegas. Rodriguez then held Villegas by placing

his foot on Villegas's back.  Rodriguez placed only enough pressure on Villegas to prevent Villegas from further injuring himself, and used no more pressure than Grover had applied when holding Villegas with his hands.  Although Plaintiff's attorney argued that Rodriguez "stood" on Villegas, there is no evidence to support that argument.  Neither EMS employee perceived that Rodriguez was applying excessive pressure to Villegas.

Rabalais called a medical doctor at Brazosport Hospital to ask about the best way to transport Villegas.  The medical doctor instructed Rabalais to transport Villegas to the hospital in an ambulance on a backboard with his hands handcuffed behind his back. When Rabalais placed Villegas on the backboard, he observed that Villegas was not breathing.  The officers removed the handcuffs and the EMS attendants began CPR and ventilation.  Villegas was intubated, placed on the backboard, and transported by ambulance to the hospital where he died.  The medical examiner determined that Villegas died from an overdose of cocaine and alcohol.

Plaintiff filed this lawsuit against the City of Freeport and the individual Defendants, alleging that they violated 42 U.S.C. § 1983 when they unreasonably detained Villegas, used excessive force against him, and failed to provide him with adequate medical care.  Plaintiff alleged that the City failed to train "its employees to deal with intoxicated persons with a possible drug overdose."  *See* Complaint [Doc.

# 1], ¶ 23. Plaintiff also asserted state law claims for wrongful death, assault and battery, and "official oppression."

The City moved for summary judgment asserting that Plaintiff failed to present evidence to support the imposition of municipal liability under § 1983 and that the City enjoys governmental immunity for the state law claims. The Motion is ripe for decision.

## II.    STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). Although the facts are to be reviewed in the light most favorable to the nonmoving party, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). The

nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

### III.   STANDARD FOR MUNICIPAL LIABILITY

A municipality may be held liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 694 (1978). Municipal liability under § 1983 may be imposed only when "(1) the enforcement of a municipal policy or custom was (2) 'the moving force' of the violation of federally protected

rights." *City of Canton v. Harris*, 489 U.S. 378, 385-91 (1989); *see also James v. Harris County*, __ F.3d __, 2009 WL 2366557, *4 (5th Cir. Aug. 4, 2009). If no constitutional violation occurred, it is irrelevant whether the municipality had an official policy or custom that would have authorized unconstitutional conduct. *See City of Los Angeles v. Heller*, 475 U.S. 797, 811 (1986); *McKee v. City of Rockwall*, 877 F.2d 409, 414 (5th Cir. 1990).

As the Court held in its prior Memorandum and Order [Doc. # 24], Plaintiff failed to present evidence that Villegas's constitutional rights were violated. Specifically, the Court noted that Rutherford and Abrego, the detaining Defendants, had probable cause to detain Villegas for public intoxication, particularly since Villegas appeared to pose a danger to himself and others. The Court also found, based on the uncontroverted evidence, that Villegas did not suffer an injury that resulted from a use of excessive force, but instead died as the result of an overdose of alcohol and cocaine. The Court also noted that the uncontroverted evidence in the summary judgment record established that Defendants provided adequate medical care for Villegas. The law enforcement officers obtained the medical services of Freeport EMS employees for Villegas almost immediately upon arriving at the police station, the EMS employees were in contact telephonically with a medical doctor at Brazosport Hospital and followed his instructions, and the EMS employees

administered CPR when it was discovered that Villegas was not breathing. As the Court noted previously, Plaintiff did not present evidence that Defendants were deliberately indifferent to Villegas's medical needs. Consequently, Plaintiff has not presented evidence of a constitutional violation and the City is entitled to summary judgment on Plaintiff's § 1983 claim.

Plaintiff argues in her Response that the City failed to train its employees "on how to treat and handle a person with Excited Delirium." *See* Memorandum in Support of Response [Doc. # 30], p. 2. When a plaintiff alleges failure to train, he must show: (1) a failure to train; (2) a causal link between the failure to train and the violation of the plaintiff's constitutional rights, and (3) the failure to train amounts to deliberate indifference to plaintiff's constitutional rights. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). In this context, a showing of deliberate indifference requires "a showing of more than a single instance of the lack of training and supervision causing a violation of constitutional rights." *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008) (quoting *Thompson*, 245 F.3d at 459) (citation omitted)). A plaintiff must demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation. *Id.*

It is uncontested that the City does not provide specific training on "excited delirium" to its law enforcement or EMS employees.[2]

Plaintiff has not presented evidence, however, of a causal link between the City's failure to train on "excited delirium" and a violation of Plaintiff's constitutional rights. As was discussed above and in the Memorandum and Order [Doc. # 24] entered May 6, 2009, Plaintiff failed to present evidence of a violation of Villegas's constitutional rights in connection with his arrest, detention, or medical care. Additionally, Plaintiff has not presented evidence that Villegas would not have died if the City had trained its personnel on "excited delirium." Indeed, Plaintiff's own expert, Keith Livingston,[3] agrees that it cannot be determined whether Villegas would still have died had he not been taken into police custody, had he been taken immediately from the scene of his arrest to the hospital, or had he been treated any

---

[2] Nothing in this Memorandum and Order should be interpreted to hold or imply that specialized training on "excited delirium" is constitutionally required.

[3] It is highly unlikely that Livingston's opinions would be admissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Livingston has no medical training, his only formal training regarding "excited delirium" is a one week training class he attended approximately eight years ago, and he has never been recognized as an expert in a case involving "excited delirium." He has never worked as a law enforcement officer in Texas and is not familiar with the standards for training law enforcement officers in Texas. His opinions have not been subjected to peer review, and they are not supported by a general consensus in the relevant scientific or professional communities. Indeed, Livingston admitted that his opinions are based heavily on his own subjective view of the facts of the case.

differently by the City's employees.  Plaintiff has failed to raise a genuine issue of material fact regarding any causal link between the City's failure to train on "excited delirium" and any alleged constitutional violation.  The City is entitled to summary judgment on Plaintiff's failure to train claim.

Plaintiff has also failed to present evidence that supports the "deliberate indifference" element of his failure to train claim.  There is no evidence in the record that City employees had previously encountered an individual experiencing "excited delirium."[4]  There is no evidence that the City knew or should have known of the need for specialized training on "excited delirium" and made a conscious decision to forego that training.  The uncontroverted evidence in the record establishes that there is significant dispute in the medical field regarding the effect of restraint in "excited delirium" situations and that the percentage of arrests for intoxication offenses that may involve excited delirium is exceptionally small -- only approximately 125 cases in over two million arrests.  Because Plaintiff has failed to raise a genuine issue of material fact on the "deliberate indifference" element of her § 1983 claim based on an alleged failure to train, the City is entitled to summary judgment on this basis also.

---

[4]  Indeed, it is far from clear that Villegas was experiencing "excited delirium" on the night of his arrest.

## III.   STATE LAW CLAIMS

The City argues that it is entitled to summary judgment on Plaintiff's state law claims because it has not waived its official immunity. The statute providing for limited waiver of the City's immunity, § 101.021 of the Texas Civil Practices and Remedies Code, waives immunity in claims involving personal injury or death caused by "the wrongful act or omission or the negligence of an employee acting within the scope of his employment" if the injury arises from the operation of a motor vehicle or motor-driven equipment and the employee would otherwise be personally liable under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 101.021. The statute also waives immunity for personal injury or death caused by "a condition or use of tangible personal or real property" with additional restrictions. *Id.*

Plaintiff in her Response did not address the City's argument regarding its immunity for the state law claims. Because Plaintiff has not cited any basis for a waiver of the City's governmental immunity under the allegations in this case, the City is entitled to summary judgment on the state law claims.

## IV.   CONCLUSION AND ORDER

Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding whether Villegas was deprived of a Constitutional right. Additionally, Plaintiff has failed to present evidence that raises a genuine fact dispute regarding

whether the City had a policy or custom that was adopted in deliberate indifference to Villegas's constitutional rights and that caused Villegas's death. As a result, the City is entitled to summary judgment on Plaintiff's § 1983 claim.

The City is entitled to governmental immunity on the state law claims asserted by Plaintiff. Accordingly, it is hereby

**ORDERED** that the City's Motion for Summary Judgment [Doc. # 25] is **GRANTED** and Plaintiff's claims against the City are **DISMISSED WITH PREJUDICE**. The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 17th day of **August, 2009**.

_____
Nancy F. Atlas
United States District Judge